**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


**DEANNA BETTENCOURT,**                    09-CV-1200-BR

       **Plaintiff,**

                                    **OPINION AND ORDER**
**v.**                                     **Portland Division**

**BROOKDALE SENIOR LIVING**
**COMMUNITIES, INC.,**

       **Defendants.**


**JEFF MERRICK**
Jeff Merrick, P.C.
4800 S.W. Meadows Rd, Suite 300
Lake Oswego, OR 97035-5277
(503) 665-4234

       Attorneys for Plaintiff

**LEAH C. LIVELY**
**JEREMY S. HEALEY**
Lane Powell, P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2100

       Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Brookdale Senior Living Communities, Inc.'s Motion (#4) to Compel Arbitration and Stay or Abate Lawsuit Pending Arbitration.

For the reasons that follow, the Court **DEFERS** ruling on Defendant's Motion pending trial pursuant to § 4 of the Federal Arbitration Act (FAA) to resolve whether the parties actually formed an arbitration agreement.  After the jury decides that question, the Court will determine how Plaintiff's Motion for Partial Summary Judgment (#14) should be resolved.

<u>**BACKGROUND**</u>

In November 2006, Plaintiff Deanna Bettencourt began full-time employment for Defendant Brookdale Senior Living Communities, Inc., as a resident assistant at a facility known as Wynwood of Mt. Hood.  On February 27, 2007, it appears Plaintiff signed a document provided by Defendant titled Employment Binding Arbitration Agreement,[1] which Defendant required as a condition

---

[1] In her Declaration in Opposition to Defense Motions submitted with her Response, Plaintiff equivocates as to whether she signed the Agreement.  In paragraph five of her Declaration, Plaintiff states "it appears that I signed the so-called 'agreement' on February 27, 2007."  In paragraph six, however, Plaintiff indicates it is, in fact, her signature on the Agreement by stating:  "My signature on the 'agreement' in February 2007 did not coincide with any promotion or advancement."  For purposes of this Motion only, the Court, therefore, concludes Plaintiff signed the Agreement.

2 - OPINION AND ORDER

of Plaintiff's continued employment.  The Agreement requires the

parties to submit certain claims that might arise out of their

employment relationship to confidential, "mandatory binding

arbitration."  Section 1(a) of the Agreement requires arbitration

of

> any claim that could be asserted in court or
> before an administrative agency or claims for
> which you have an alleged cause of action,
> including without limitation . . . claims for
> discrimination . . . claims for wrongful
> discharge . . . and/or claims for violation
> of any federal, state, or other governmental
> law, statute, regulation, or ordinance, and
> whether based on statute or common law.

Although the Agreement contains a signature block for execution

by one of Defendant's "Company Representatives," the signature

block is blank, and it appears Defendant did not execute the

Agreement.

Defendant terminated Plaintiff's employment in June 2009.

On September 1, 2009, Plaintiff filed a complaint in Multnomah

County Circuit Court.  On October 9, 2009, Defendant removed the

matter to this Court based on the Court's diversity jurisdiction

under and pursuant to 28 U.S.C. §§ 1332, 1441, 1446.

On October 13, 2009, Defendant filed a Motion to Compel

Arbitration in which it requests this Court to order arbitration

pursuant to the Agreement and to stay this matter pending the

outcome of arbitration.

On October 16, 2009, Plaintiff filed her First Amended

3 - OPINION AND ORDER

Complaint in which she asserts state-law claims for (1) earned but unpaid wages and penalties wages, (2) unlawful discrimination/retaliation on the basis of her wage claim, and (3) wrongful discharge.  Plaintiff filed a Motion for Partial Summary Judgment on November 9, 2009, in which she requests this Court to grant summary judgment as to her Claim One for penalty wages under Oregon Revised Statute § 652.150.

On November 17, 2009, Defendant filed a Motion to Extend the Deadline to Respond to Plaintiff's Motion for [Partial] Summary Judgment requesting this Court to decide Defendant's Motion to Compel Arbitration before requiring it to file a response to Plaintiff's Motion.  The Court granted Defendant's Motion to Extend and struck the briefing schedule as to Plaintiff's Motion for Partial Summary Judgment pending the Court's resolution of Defendant's Motion to Compel Arbitration.


## STANDARDS

The FAA was enacted to "advance the federal policy favoring arbitration agreements."  *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable."  *Id.  See also* 9 U.S.C. § 2.  The court must "rigorously enforce" arbitration agreements and "must order arbitration if it is satisfied that the making of the agreement

4 - OPINION AND ORDER

for arbitration is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)).  Accordingly, the court's task is to "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation omitted).  *See also Simula*, 175 F.3d at 720.

If the court determines there are unresolved issues of fact as to the formation of the arbitration agreement, the court must "proceed summarily" to a jury trial on the merits.  9 U.S.C. § 4. *See Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007).  If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss the matter.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  *See also* 9 U.S.C. §§ 3, 4.

**DISCUSSION**

In its Motion to Compel Arbitration, Defendant contends the Agreement is a valid, written, and enforceable agreement between the parties to arbitrate Plaintiff's claims pursuant to the FAA, and, therefore, the Court must order the parties to pursue this matter in binding arbitration.  In her Response, Plaintiff challenges Defendant's Motion on the grounds that:  (1) the Agreement is not subject to the FAA; (2) an agreement to

arbitrate Plaintiff's claims was not formed between the parties; (3) even if such an agreement were formed, it is not enforceable; and (4) Plaintiff should be permitted to litigate her equitable claims in this Court even if her statutory claims are referred to arbitration.

## I.    The Federal Arbitration Act governs the Agreement.

Plaintiff contends this Agreement is not subject to the FAA because Plaintiff was hired, performed all of her work, and was fired within the state of Oregon, and, therefore, the parties did not engage in interstate commerce, which is a necessary requirement for the FAA to apply.

Section Two of the FAA provides a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The FAA broadly applies to arbitration agreements involving "commerce among the several States or with foreign nations" or territories.  9 U.S.C. § 1.  The Supreme Court has interpreted the phrase "involving commerce" as it is used in the FAA as the functional equivalent of the phrase "affecting commerce," signaling "Congress's intent to exercise its Commerce Clause powers to the full."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-76 (1995).  The Court found this broad interpretation consistent with the purpose of the FAA, which is

6 - OPINION AND ORDER

to put arbitration agreements on an equal footing with other contracts. *Id.* at 274-77. This interpretation is also consistent with the Supreme Court's prior interpretations of the FAA. *Id.* Thus, the Court adopted a "commerce-in-fact" test to determine whether the contract involves interstate commerce. *Id.* at 281.

As Defendant points out, the Supreme Court has expressly held "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *Waffle House*, 534 U.S. at 289. *See also Adams*, 532 U.S. at 113-24 (upholding the Court's interpretation in *Allied-Bruce*). Thus, the Agreement, if properly formed, is an employment contract subject to the FAA if it, in fact, involves or affects interstate commerce.

Defendant notes it is an assisted-living service provider engaged in interstate commerce with operations in multiple states including Oregon, Wisconsin, Tennessee, and Illinois. In *Allied-Bruce*, the Court considered the multi-state character of Terminix and Allied-Bruce when it concluded the contract at issue was subject to the FAA. 513 U.S. at 281. As noted, the Court must interpret the FAA's applicability to the broadest extent of Congress's power under the Commerce Clause. Thus, even if Plaintiff's assertion that *her employment* with Defendant did not involve interstate commerce, which the Court notes is not

supported by any evidence in the record and is unlikely if one considers the economic effects of Plaintiff's employment in the aggregate, the multi-state nature of Defendant's business, nonetheless, establishes Plaintiff's employment arbitration contract with Defendant involves or affects interstate commerce. The Court, therefore, concludes the Agreement is subject to the FAA because the Agreement, if properly formed, is a "contract evidencing a transaction involving commerce" under FAA §§ 1 and 2.

**II.  On this record, whether the parties entered into the Agreement to arbitrate is an issue for a jury to determine.**

Plaintiff contends the parties did not form an agreement to arbitrate her claims on the grounds that there was a lack of consideration based on the "nonmutual" nature of the Agreement and a lack of assent by Defendant to the terms of the Agreement.

Although the FAA promotes a clear policy favoring agreements to arbitrate disputes, the court must make a threshold determination as to whether a contract was in fact formed. *See, e.g.*, *Simula*, 175 F.3d at 719-20; *Lowden*, 512 F.3d at 1217.  The court, therefore, must first determine whether an arbitration agreement that was provided to an existing employee as a mandatory policy and condition of the employee's continued employment forms a binding contract when the employee signed it but the employer failed to do so despite express terms in the agreement requiring the signature of a representative of the

8 - OPINION AND ORDER

employer.

Here the Court must apply Oregon contract law to resolve questions concerning formation of the Agreement. *See Lowden*, 512 F.3d at 1217. *See also First Options*, 514 U.S. at 944. Under § 4 of the FAA, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."[2] 9 U.S.C. § 4. *See Sanford*, 483 F.3d at 962.

Plaintiff contends the Agreement requires only Plaintiff to bring her claims in arbitration and reserves Defendant's right to bring its claims against an employee in court. As a result, Plaintiff contends the terms of the Agreement are so "nonmutual" as to lack consideration.

Under the Agreement's provision for "Claims Covered," however, Defendant promised to arbitrate certain claims in exchange for Plaintiff's promise to arbitrate certain claims. Defendant's promise included forgoing litigation of any tort, breach-of-contract, or breach of confidentiality and trade-secret claims against Plaintiff. Moreover, as a condition of Plaintiff's employment, Defendant maintained Plaintiff's at-will employment in exchange for her assent to the Agreement, which is additional consideration as reflected in the second paragraph of

---

[2] Section 4 provides a party alleged to have not complied with an arbitration agreement "may demand a jury trial." In her Amended Complaint, Plaintiff made such a demand.

the Agreement.  In any event, strict mutuality of obligation is not required in an arbitration agreement; *i.e.*, only "sufficient consideration" is required to support an arbitration agreement. *Motsinger*, 211 Or. App. at 619-22.  Here the Court concludes the Agreement required Defendant to provide sufficient consideration to support the formation of a contract with Plaintiff.

Plaintiff also contends the Agreement was never actually formed because Defendant did not assent to the Agreement by signing it.  Although Plaintiff stated in her Declaration in support of her Response that "it appears that I signed the so-called 'agreement' on February 27, 2007," and, indeed, Plaintiff's signature undisputedly appears to be on the Agreement, Defendant did not sign the Agreement even though the Agreement itself expressly requires the signature of Defendant's representative.  For example, the first page of the Agreement provides:  "After we sign this Agreement, we both will be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this agreement."  The Agreement also provides:

> By the provision of [Bettencourt's] signature
> below, [Bettencourt] indicate[s] [her]
> agreement to the terms set forth above.  By
> the provision of the signature of our
> Representative named below, we indicate our
> agreement, as well, to the terms set forth in
> this Procedure.

10 - OPINION AND ORDER

Nonetheless, as noted, a representative of Defendant did not sign the Agreement.

Defendant contends its signature is not required to create a binding arbitration agreement under Oregon or federal law. Indeed, § 2 of the FAA only requires an arbitration agreement to be written and does not expressly require it to be signed. 9 U.S.C. § 2. Moreover, Oregon law does not necessarily require a signature to create a contract. *See Western Bank v. Morrill*, 245 Or. 47 (1966)(a signature is not required to create a binding agreement when other manifestations of assent are present). Defendant, however, has not cited any authority to support its contention that its signature is not required to form a binding arbitration agreement when the written agreement Defendant drafted expressly required its signature as a means to demonstrate Defendant's assent and to create a contractual obligation.

Instead, Defendant contends the text of the Agreement as a whole reflects Defendant's assent to be bound by the Agreement. For example, in the prefatory language of the Agreement addressed to the employee, the Agreement provides:  "In exchange for your agreement to submit these disputes to binding arbitration, we likewise agree to the use of arbitration as the exclusive forum for resolving employment disputes covered by this Agreement." Defendant cites the Restatement (Second) of Contracts § 27 (1981)

for the proposition that "manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof."  The parties, however, have not asserted as set out in Restatement § 27 that they first assented to the terms of the Agreement and then agreed to prepare and to adopt a written memorial of that agreement.  Moreover, the Court cannot lightly ignore the written terms of the Agreement.

To support her position, Plaintiff cites, in turn, to the Restatement (Second) of Contracts § 26 (1981), which provides:

> A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.

Plaintiff contends the Agreement does not even constitute an offer to contract because it did not vest in Plaintiff the power to conclude the bargain; for example, according to the Agreement itself, it only becomes operative "[a]fter [Defendant] sign[s] this Agreement."

In light of the terms of the Agreement that required Defendant's signature to demonstrate its assent, the absence of an explanation for the lack of signature, and Defendant's contention that other indicia of its assent, including language in the Agreement demonstrating its present intent to be bound by

12 - OPINION AND ORDER

the Agreement, were sufficient to form a contract, the Court
cannot, on this record, conclusively determine whether the
parties formed a contract.  In other words, a question of fact
exists with respect to the formation of the Agreement.

As noted, under § 4 of the FAA, when an issue of fact exists
as to the formation of an agreement to arbitrate, the Court must
summarily proceed to a jury trial on the issue.  The Court,
therefore, cannot resolve Defendant's Motion to Compel
Arbitration until a jury determines whether the parties actually
formed a contract.

**III. Enforceability of the Agreement.**

Even if a jury finds the parties formed an agreement to
arbitrate, Plaintiff argues this Ageement is, in any event,
unenforceable under Oregon law on the grounds that (1) it
violates Oregon Revised Statute § 36.620(5), (2) it is void "as
against public policy," and (3) it is unconscionable.  The Court
notes resolution of the issue of contract formation at trial
would be unnecessary if the Agreement is otherwise unenforceable.
The Court, therefore, in the interest of judicial economy,
addresses Plaintiff's enforceability arguments.

Plaintiff contends the Agreement is unenforceable under
Oregon law because "arbitration is a matter of contract," and
courts must "place arbitration agreements on equal footing with
other contracts." *Waffle House*, 534 U.S. at 293.  Accordingly,

13 - OPINION AND ORDER

when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2. *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996); *Ferguson v. Countrywide Cred. Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). To evaluate the validity of an arbitration agreement, federal courts must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). *See also Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)(federal courts must apply the law of the forum state to determine whether an arbitration agreement is enforceable).

Thus, the Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate state-court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.* If "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme

court likely would not follow it." *Chalk v. T-Mobile USA, Inc.*,
560 F.3d 1087, 1092 (9th Cir. 2009)(quoting *Ryman v. Sears,
Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007)).

**A.    Oregon Revised Statute § 36.620(5) is preempted by the
FAA.**

Plaintiff contends the Agreement is unenforceable under
Oregon law.  Oregon Revised Statute § 36.620(5) provides:

> A written arbitration agreement entered into
> between an employer and employee and
> otherwise valid under subsection (1) of this
> section is voidable and may not be enforced
> by a court unless:
>
> (a) The employer informs the employee in a
> written employment offer received by the
> employee at least two weeks before the first
> day of the employee's employment that an
> arbitration agreement is required as a
> condition of employment; or
>
> (b) The arbitration agreement is entered into
> upon a subsequent bona fide advancement of
> the employee by the employer.

Thus, Plaintiff asserts in her Response that any such agreement
made during her employment with Defendant must have been
accompanied by a promotion to be an enforceable agreement under
Oregon Revised Statute § 36.620(5)(b).  Defendant did not respond
to this argument in its Reply other than to assert that federal
law controls.

To resolve this issue, the Court must determine whether
Oregon law may render an arbitration agreement unenforceable on
bases other than general legal or equitable grounds for

15 - OPINION AND ORDER

revocation of a contract.  As noted, the FAA provides a written agreement to arbitrate a dispute "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The question is whether the FAA preempts the ability of states to create additional conditions of enforceability beyond the FAA's requirements for arbitration agreements.

In *Doctor's Associates, Inc. v. Casarotto*, the United States Supreme Court addressed this question with respect to a Montana statute that required arbitration agreements to include a typed, underlined notice in all capital letters on the first page to be enforceable.  517 U.S. 681, 684 (1996).  The Supreme Court held: "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions" because the FAA requires arbitration provisions to be placed on "the same footing as other contracts."  *Id.* at 687 (quoting *Scheck v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).  The Court, therefore, held the FAA preempted the Montana statute because the FAA only allows states to invalidate arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" and the Montana statute's requirement was specific to arbitration agreements.  *Id.* at 687-88.

Here Oregon Revised Statute § 36.620(5) only renders

16 - OPINION AND ORDER

unenforceable arbitration agreements that would otherwise be enforceable under the FAA.  Section 36.620(5), therefore, is contrary to the "goals and policies" of the FAA because it singles out arbitration contracts "in a class apart from 'any contract.'"  *See Doctor's Assocs.*, 517 U.S. at 688.  Thus, the FAA preempts Oregon Revised Statute § 36.620(5), and, as a result, § 36.620(5) is not a valid basis for concluding the Agreement is unenforceable.

**B.   The Agreement is not "void as against public policy."**

Plaintiff also contends the Agreement is unenforceable because its confidentiality provision is against the public policy favoring open litigation of employment-related disputes.

Under Oregon law, a contract that is against public policy will not be enforced.  *Hendrix v. McKee*, 281 Or. 123, 128 (1977).  The Oregon Supreme Court has held:

> If the consideration for the contract or its agreed purpose is illegal or against public policy on its face, it will not be enforced.  If the contract on its face is not illegal or against public policy, as in the present case, the [party asserting the contract's illegality] assumes the burden of alleging and proving its illegality. . . . In addition, if the contract is merely promotive of activities which are either illegal or against public policy, a weighing of conflicting public policies is required.

*Id.*

The Agreement includes a provision for a "final binding confidential arbitration."  Plaintiff maintains part of the

17 - OPINION AND ORDER

Oregon employment-law scheme is to create a deterrent effect on businesses by using a public judicial forum to vindicate employees' rights.  Thus, Plaintiff argues confidential arbitration of an employment dispute is against public policy because it diminishes the deterrent effect on employers and also loses its precedential effect.  Plaintiff, however, does not cite any Oregon authority that sets out this public policy, that expresses the relative importance of the deterrent effect of nonconfidential resolutions of employment disputes, or that identifies confidential resolutions of employment disputes as violations of public policy.

Defendant, in turn, maintains confidential arbitration provisions are common and contends a strong public policy exists that favors the enforcement of private agreements.  *See, e.g.*, *Bliss v. S. Pac. Co.*, 212 Or. 634, 646 (1958).  Moreover, the Oregon Supreme Court has long recognized the important public policy favoring freedom of contract:

> It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced.

*In re Marriage of McDonald*, 293 Or. 772, 779 (1982)(quoting

18 - OPINION AND ORDER

*Eldridge v. Johnston*, 195 Or. 379, 405 (1952)).

Under the Agreement, the arbitration process provides Plaintiff with an avenue to pursue the legal rights she is afforded under Oregon and federal law and grants the arbitrator the full remedial authority that a court or an administrative agency would have to vindicate Plaintiff's rights.  Morever, if the arbitrator found in favor of Plaintiff in a confidential arbitration, the decision would likely have the same deterrent effect on Defendant as it would if this Court resolved the matter.  Thus, the Court concludes the fact that arbitration under the Agreement would be confidential does not sufficiently undermine the public policy served by Oregon statutes to justify finding this Agreement void as against public policy.

The Court notes the only deterrent effect that might be sacrificed by a confidential arbitration if Plaintiff prevailed is the effect of published precedent on other companies in Oregon.  Oregon law, however, does not limit the private right to settle an employment dispute confidentially outside of a courtroom, which suggests the policy favoring the freedom of individuals to contract is more highly valued than the deterrent effect that results from public resolution of such matters.  Moreover, the Oregon Court of Appeals has previously upheld the confidentiality provision in an arbitration agreement in the face of a plaintiff's argument that the provision is unfair and

unconscionable.  *See Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 575 (2007).  In doing so, the court noted confidentiality provisions in arbitration agreements are common. *Id.* at 575 n.6.

Thus, Plaintiff has not met her burden to show that a basis exists for the Court to conclude the Agreement is unenforceable because its confidentiality provision "contravenes some 'over-powering rule of public policy.'"  *See Compton v. Compton*, 187 Or. App. 142, 148 (2003)(quoting *Eldridge v. Johnston*, 195 Or. 379, 405 (1952)).

## C.  **The Agreement is not unconscionable.**

Plaintiff also contends the Agreement is unenforceable because it is both procedurally and substantively unconscionable.

"[U]nconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable." *Chalk*, 560 F.3d at 1092 (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007)).  "The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007)(citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)).  Whether a contract is unconscionable is a "question of law that must be determined based on the facts in existence at the time the contract was made." *Motsinger*, 211

Or. App. at 614.  The determination as to whether a free-standing
arbitration agreement is unconscionable is for the court to
determine.  *See Jackson v. Rent-A-Center West, Inc.*, 581 F.3d
912, 916 (9th Cir. 2005).

"In Oregon, the test for unconscionability has two
components--procedural and substantive." *Motsinger*, 211 Or. App.
at 614 (citing *Vasquez-Lopez*, 210 Or. App. at 556).  "Procedural
unconscionability refers to the *conditions* of contract formation,
and substantive unconscionability refers to the *terms* of the
contract." *Id.* (citation omitted; emphasis in original).
"Although both forms of unconscionability are relevant, . . .
only substantive unconscionability is absolutely necessary."
*Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez*, 210 Or. App. at
567)(quotation omitted).

### 1.    Procedural unconscionability.

Plaintiff asserts the Agreement is procedurally
unconscionable because there was a vast disparity of bargaining
power between Plaintiff and Defendant and Defendant did not
explain the Agreement to Plaintiff, negotiate its terms with
Plaintiff, or "offer Plaintiff legal counsel."  Plaintiff also
contends oppression and surprise in the formation of the
Agreement render it procedurally unconscionable.  Specifically,
Plaintiff notes the Agreement was a "take-it-or-leave-it"
condition of her employment that was not an issue for

negotiation, which demonstrates the unequal bargaining power

between Plaintiff and Defendant.

As noted, "[p]rocedural unconscionability refers to the

*conditions* of contract formation." *Motsinger*, 211 Or. App. at

614 (emphasis in original).  The inquiry into procedural

unconscionability focuses in part on the factor of oppression.

> Oppression arises when there is inequality in
> bargaining power between the parties to a
> contract, resulting in no real opportunity to
> negotiate the terms of the contract and the
> absence of meaningful choice.

*Id*.  "[A] contract of adhesion--an agreement presented on a take-

it-or-leave-it basis--reflects unequal bargaining power. . . ."

*Chalk*, 560 F.3d at 1094 (citing *Motsinger*, 211 Or. App. at 615).

In *Motsinger*, however, the Oregon Court of Appeals held unequal

bargaining power is insufficient alone to invalidate an

arbitration clause without some evidence of deception,

compulsion, or unfair surprise.  *Id.* at 615-17.

The record reflects Plaintiff was required to sign the

Agreement as a condition of continued employment, and, therefore,

the Agreement is an adhesion contract.  Accordingly, the contract

is the product of unequal bargaining power between the parties.

In *Chalk*, however, the Ninth Circuit concluded "the take-it-or-

leave-it nature of [a contract] is insufficient to render it

unenforceable" on the basis of procedural unconscionability when

the arbitration clause "was not hidden or disguised and where the

22 - OPINION AND ORDER

plaintiff was given time to read the documents before assenting
to their terms." 560 F.3d at 1094 (citation omitted).  Plaintiff
does not contend she was coerced or deceived when she entered
into the Agreement, and she acknowledges she signed it and
returned it to Defendant after Defendant provided her with the
Agreement.  "A party is presumed to be familiar with the contents
of any document that bears the person's signature." *Id.* at 616-
17.  Accordingly, although the adhesive characteristic of the
Agreement "reflects unequal bargaining power," that alone is not
sufficient to render it unenforceable. *See Chalk*, 560 F.3d at
1094 (citation omitted).

Plaintiff also asserts there were "tricky" terms in the
Agreement that were unfairly surprising to her such as the cost
burden on Plaintiff, the lack of mutual terms, and the claim-
notice requirement.  Such provisions, however, are not a basis
for finding "unfair surprise" under these circumstances because
these provisions were not hidden from Plaintiff and were apparent
from the face of the Agreement. *See Motsinger,* 211 Or. App. at
614*.*  These arguments, however, are relevant to the fairness of
the terms of the Agreement, which the Court will consider when
evaluating substantive unconscionability.

### 2.   **Substantive unconscionability.**

Under Oregon law, "the emphasis is clearly on
substantive unconscionability." *Vasquez-Lopez*, 210 Or. App. at

23 - OPINION AND ORDER

569.  *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  The Court must determine whether the arbitration clause is substantively unconscionable in light of the unequal bargaining power between the parties.

Plaintiff contends the arbitration clause is substantively unconscionable because (1) the cost-allocation provision is unfairly burdensome, (2) the Agreement is unfairly balanced in Defendant's favor, (3) the required claim notice constitutes overreaching, (4) the small panel of arbitrators is insufficient to ensure a fair resolution, and (5) the "repeat-player" effect unfairly favors Defendant in the arbitral forum.

The nature of an adhesion contract reflects "an underlying inequality in the parties' ability to bargain." *Chalk*, 560 F.3d at 1094.  The Court, therefore, must consider whether that disparity in bargaining power "'is combined with terms that are unreasonably favorable to the party with the greater power'" to determine whether the Agreement is substantively unconscionable.  *Id.* (quoting *Motsinger*, 211 Or. App. at 617).

### a.   Cost-allocation provision.

Plaintiff contends the cost-allocation provision of the arbitration clause is unconscionable because it is prohibitively expensive.  The cost-allocation provision in the Agreement provides:

> The parties agree that the costs of the
> AAA administrative fees and the
> arbitrator's fees and expenses, will be
> paid for us initially, but as provided
> by statute or decision of the
> arbitrator.  In other words, all costs
> could after all is complete be [*sic*]
> paid by us or you, depending on the
> outcome.  All other costs and expenses
> associated with the arbitration,
> including, without limitation, the
> party's respective attorneys' fees,
> shall be borne by the party incurring
> the expense, unless provided otherwise
> by statute or decision of the
> arbitrator.

"An arbitration agreement is unenforceable under the FAA if it denies the litigant the opportunity to vindicate his or her rights in the arbitral forum." *Vasquez-Lopez*, 210 Or. App. at 573 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).  In *Motsinger*, the Oregon Court of Appeals analyzed the following factors to determine whether a cost-sharing provision in an arbitration clause denied a plaintiff vindication of her rights and, therefore, was unconscionable:

> (1) [W]hether plaintiff will bear any
> costs at all in the arbitration, (2) if
> so, what those costs would be, and
> (3) what deterrent effect, if any, those
> potential costs would have on
> plaintiff's ability to bring an action
> to vindicate her rights.

211 Or. App. at 618.

Oregon courts "will not invalidate [an] arbitration clause simply because of the possibility that plaintiff, if she were to lose, would bear some undetermined

25 - OPINION AND ORDER

costs of arbitration." *Motsinger*, 211 Or. App. at 618.  *See also Vasquez-Lopez*, 210 Or. App. at 574 (an arbitration clause is not rendered substantively unconscionable because of the mere possibility that the plaintiff would have to bear a prohibitive amount of costs).  "Denial of access to an arbitral forum occurs when the cost of arbitration is large in absolute terms, but also, comparatively, when that cost is significantly larger than the cost of a trial." *Vasquez-Lopez*, 210 Or. App. at 574.  In addition, the party who asserts an arbitration clause is invalid on the ground that a cost-sharing provision renders the arbitration clause unconscionable bears the burden of showing the likelihood of incurring such costs. *Motsinger*, 211 Or. App. at 617-18.  *See also Green Tree*, 531 U.S. at 92.  If the plaintiff does not offer any evidence of the "likely costs of arbitration or the potential impact of those costs on her," a court cannot adequately assess the costs the plaintiff will bear and the "deterrent effect, if any, those costs would have on [a] plaintiff's ability to bring an action to vindicate her rights." *Motsinger*, 211 Or. App. at 618.  *See also Vasquez-Lopez*, 210 Or. App. at 574.

Plaintiff asserts the cost-allocation provision is so expensive that it denies her access to the arbitral forum because she would have to pay all initial expenses under the Agreement including the arbitrator's fees and expenses and might

ultimately bear the entire expense of the arbitration.

With respect to the risk that Plaintiff may bear all costs of the arbitration, the Agreement does not identify who will absolutely bear the costs of the arbitration. The Agreement leaves that determination to the arbitrator based on the outcome of the arbitration. Under Oregon law, as noted, the mere risk that a party may bear the costs of arbitration is not sufficient to render an arbitration agreement substantively unconscionable. *Vasquez-Lopez*, 210 Or. App. at 574. Plaintiff, nevertheless, cites to *Vasquez-Lopez* because the court in that case found the cost of arbitration would be a strong deterrent to the plaintiff's vindication of her rights in the arbitral forum. The arbitration clause in *Vasquez-Lopez*, however, required the parties to split the costs of the first day of the arbitration and the plaintiff to pay all of the remaining costs of the arbitration. *Id.* at 574-75. Here the Court cannot determine whether Plaintiff would actually bear any costs beyond the initial costs under the Agreement. Thus, if the Court found the cost-allocation provision to be unconscionable on this ground, the Court would be invalidating the Agreement on the basis of mere speculation. *See Motsinger*, 211 Or. App. at 618.

In any event, Plaintiff asserts even the initial cost of the "AAA administrative fees and the arbitrator's fees and expenses" would be prohibitive for Plaintiff. She contends

27 - OPINION AND ORDER

those initial costs would include her filing fee, the employer's filing fee, and the arbitrator's fees and expenses. Defendant, however, contends these "initial" fees will only amount to a filing fee of $150 for Plaintiff's claim.

The Court acknowledges the cost-allocation provision in the Agreement is poorly written. Although the initial clause provides "AAA administrative fees and the arbitrator's fees and expenses, will be paid *for us* initially," that clause does not expressly identify Plaintiff as the party responsible for paying such fees and expenses. In fact, the Agreement indicates twice that the costs associated with the arbitration are to be allocated "as provided by statute or the decision of the arbitrator."

Both parties refer to the American Arbitration Association (AAA) rules[3] for employer-promulgated arbitration agreements, which are "incorporated by reference into [the arbitration] Procedure." The AAA rules require a filing fee of $175 for an employee filing a claim. Under the AAA rules, that cost would be borne by Plaintiff. The filing fee for the employer is $925 and, according to the rules, "is payable in full by the employer, unless the plan provides that the employer pay more." Moreover, the AAA rules require the employer to pay the

---

[3] The rules can be found at the American Arbitration Association website, www.adr.org/drs.

28 - OPINION AND ORDER

$325 per-day fee for hearings before the arbitrator.  The rules also provide "all expenses of the arbitrator, including required travel and other expenses, and any AAA expenses . . . shall be borne by the employer."  These cost-allocation rules are consistent with Plaintiff's argument in her memorandum that "[t]he AAA recognizes that costs can invalidate employment arbitration agreements, so it normally caps the filing fee for the employee at $150" (even though Plaintiff's filing fee is apparently now $175).  The AAA rules are also consistent with Defendant's statement in its Reply that Plaintiff is responsible for her filing fee under the Agreement and Defendant is responsible for its filing fee together with all other costs, expenses, and fees determined by the AAA rules, applicable statutes, and the arbitrator.

The Agreement further provides:  "Any conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in this Agreement."  Plaintiff contends the Agreement overrides the AAA rules and assigns "AAA administrative fees and the arbitrator's fees and expenses" to Plaintiff.  Considering the Agreement as a whole and in light of its incorporation of AAA rules, however, the Court concludes there is not a conflict between the Agreement and AAA rules as to Plaintiff's payment of fees and expenses.  The Agreement only requires Plaintiff to pay

her filing fee, which is less than the fee for filing an action in federal court ($350 in this district) and for Multnomah County Circuit Court where Plaintiff originally filed this action ($189 at that time).  Defendant must pay all other "initial" fees as required by the AAA rules.  Any remaining fees, costs, and expenses will be determined by AAA rules, applicable statutes, and the decision of the arbitrator in accordance with the Agreement.

Accordingly, the Court concludes on this record that Plaintiff has not shown the cost-allocation provision of the Agreement conflicts with AAA rules by requiring Plaintiff initially to pay more than her filing fee.  The cost-allocation provision, therefore, is not substantively unconscionable.

**b.    Imbalance of terms.**

Plaintiff also maintains the Agreement is substantively unconscionable because it is effectively unilateral.  Specifically, Plaintiff asserts the Agreement allows the "employer [to] go to court, but the employee may not go to court."  Thus, Plaintiff contends Defendant did not give consideration in exchange for Plaintiff's promise to submit to arbitration.

Under Oregon law, the court determines whether an agreement is so unbalanced as to be unconscionable on a case-by-case basis.  *Motsinger,* 211 Or. App. at 625.  The Oregon Court of

30 - OPINION AND ORDER

Appeals found in *Motsinger* that "[g]iven the public policy favoring arbitration as a forum for dispute resolution, and Supreme Court case law recognizing the adequacy of that forum, we are reluctant to conclude that a unilateral agreement to arbitrate is inherently unconscionable in all cases." *Id.* at 624-25.

In the Agreement's provision for "Claims Covered," the parties mutually agree to a list of claims that must be resolved through arbitration and waive the right to resolution by a jury. Just as Defendant could demand arbitration of those claims, Plaintiff could demand arbitration of any tort claim, breach-of-contract claim, or breach of confidentiality or trade secrets that Defendant might bring against Plaintiff. In addition, the claims that are expressly excepted from mandatory arbitration in the Agreement are primarily claims that Plaintiff might bring (for example, unemployment-benefits claims, workers' compensation claims, and claims before the Equal Employment Opportunity Commission). Moreover, claims for injunctive or equitable relief are mutually excepted.

The Court, therefore, concludes on this record that the terms of the Agreement are sufficiently balanced and are not so lacking in mutuality as to be substantively unconscionable.

### c. **Claim-notice provision.**

Plaintiff also contends the Agreement's claim-

31 - OPINION AND ORDER

notice provision is substantively unconscionable because it requires too much pre-claim notice from an employee.  The claim-notice provision of the Agreement requires the aggrieved party to provide

> written notice of any claim to the other party as soon as possible after the aggrieved first knew, or should have known, the facts giving rise to the claim.  The written notice shall describe the nature of all claims asserted and the facts upon which those claims are based . . . within any statute of limitations as set forth in the law of the [forum] state.

Plaintiff contends this provision is too onerous for her and other employees who are not familiar with the law and who may not know "all" of their claims or "all" of the facts giving rise to such claims before the start of discovery.

The Court notes the claim-notice provision does not shorten the statute of limitations provided by state law, does not provide for exclusion of claims that an employee fails to set out in the notice, and does not alter pleading rules that would prevent a party from adding a claim or facts supporting new claims found during discovery.  Furthermore, the claim-notice provision does not limit Plaintiff to providing a single notice to Defendant.  If Plaintiff became aware of additional facts or claims after she met with counsel or following the completion of discovery, it appears she could supplement her notice to add facts or claims.  Finally, these notice requirements are no more

32 - OPINION AND ORDER

onerous than the state or federal pleading standards.  *See, e.g.,*
Or. R. Civ. P. 18A; Fed. R. Civ. P. 8(a).

Thus, the Court concludes on this record that the
claim-notice provision of the Agreement is not substantively
unconscionable.

### d.    **Designation of an arbitrator.**

Plaintiff contends requiring the parties to draw
from the limited AAA panel of arbitrators is unconscionable
because Plaintiff will not be able to secure a neutral and fair
forum to resolve her claims.  Plaintiff's counsel, Jeff Merrick,
stated in his Declaration in Opposition to Defense Motion that he
contacted AAA and was informed there are four arbitrators on the
employment-law panel in Portland, Oregon, but AAA would not
disclose their names.  Plaintiff, nevertheless, raises a number
of questions about the potential for bias or conflicts of
interest of hypothetical arbitrators.  Plaintiff asserts she
would "strike" an arbitrator who has past experience as an
employment-defense attorney.  Plaintiff's counsel states:  "I am
concerned that I will not find an arbitrator with whom I am
comfortable hearing my client's case.  The brief summaries
sounded like these were employer and business-oriented people,
not people people."

The Court notes the Agreement provides the parties
will jointly select an impartial arbitrator according to the AAA

33 - OPINION AND ORDER

rules.  The AAA rules provide the arbitrator will be a neutral with experience in employment law and without a personal or financial interest in the proceedings or a relationship with the parties that could create an appearance of bias.  The procedure for selecting an arbitrator allows either party to strike arbitrators whom they find objectionable and to rate their preference for others.  If the parties cannot agree to an arbitrator listed by AAA, AAA may designate another arbitrator from among its panel.

In light of these options availabel to Plaintiff, the Court finds Plaintiff's objections to the AAA arbitration panel are speculative and concludes the AAA procedures are not unconscionable as to providing a neutral and fair arbitrator to resolve Plaintiff's claims.

### e.    "Repeat-player" effect.

Finally, Plaintiff asserts Defendant's experience as a "repeat player" with AAA in the arbitral forum gives it an advantage over a one-time litigant such as Plaintiff and, therefore, renders the Agreement unconscionable.  Plaintiff cites findings from two law-journal articles that set out the repeat-players' advantages in the arbitral forum.

In one of the articles cited by Plaintiff, Lisa Bingham, the author, notes there are several measures that can be taken to counter the repeat-player effect.  Lisa B. Bingham, *On*

34 - OPINION AND ORDER

*Repeat Players, Adhesive Contracts, and the Use of Statistics in Judicial Review of Employment Arbitration Awards*, 29 McGeorge L. Rev. 223, 256 (1998).  For example, she states the AAA amended its rules to require potential arbitrators to disclose whether either party has previously selected them.  *Id.*  Indeed, the AAA rules require arbitrators to disclose "any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives."  Thus, it appears that the risk is low that a prior relationship between Defendant and an arbitrator with the AAA would be an issue in this matter.

In effect, Plaintiff is requesting the Court to declare the arbitral forum inherently unconscionable on the basis of statistics that indicate plaintiffs are less successful in arbitration than in litigation.  The Oregon Appellate Court, however, has held unconscionability of an arbitration agreement must be determined on its own particular facts, and the court eschewed *per se* rules of unconscionability in light of public policy at both the federal and state levels that support arbitration as an adequate forum for dispute resolution. *Motsinger*, 211 Or. App. at 624-25.

In summary, despite some inequality in the bargaining

35 - OPINION AND ORDER

power of the parties, Plaintiff has not met her burden to show
that the Agreement is so imbalanced against her as to render it
substantively unconscionable under Oregon law.  The Court,
therefore, concludes if the parties, in fact, entered into an
agreement to arbitrate, the Agreement is enforceable with respect
to Plaintiff's challenges on that ground.

**IV.  Plaintiff's equity claims.**

Plaintiff points out that the Agreement expressly excludes
equitable remedies such as backpay and reinstatement and,
therefore, Plaintiff should be permitted to pursue those
equitable remedies in this Court rather than in arbitration even
if the Court ultimately grants Defendant's Motion to Compel
Arbitration of Plaintiff's statutory claims.

As noted, however, factual issues exist as to the valid
formation and the precise terms of the Agreement.  Any decision
as to whether Plaintiff may litigate claims not covered by the
Agreement, therefore, is premature, and the Court defers
resolution of this issue until a verdict is rendered on the
threshold issues.


<u>**CONCLUSION**</u>

For these reasons, the Court **DEFERS** ruling on Defendant's
Motion pending trial as to whether the parties actually formed an
arbitration agreement.  The Court **DIRECTS** the parties to submit

36 - OPINION AND ORDER

by February 1, 2010, a joint proposed expedited case-management plan for resolving the issue of the formation of the Employment Binding Arbitration Agreement.  After the jury trial, the Court will determine how Plaintiff's Motion for Partial Summary Judgment (#14) should be resolved.  In preparing their joint proposal, the parties shall confer to evaluate whether there is any cost-effective basis to resolve the contract-formation dispute short of incurring the costs of an expedited jury trial, especially in light of the fact the parties still would need to incur the costs to resolve the merits of Plaintiff's Claims.

IT IS SO ORDERED.

DATED this 14th day of January, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District

37 - OPINION AND ORDER